UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CHAD FARRELL, | ) |
|        Plaintiff, | ) |
|   vs. | ) CAUSE NO. 3:10-CV-521 PS |
| OFFICER J. SHOOK, *et al.*, | ) |
|        Defendants. | ) |

**OPINION AND ORDER**

Chad Farrell, a *pro se* prisoner, filed a complaint under 42 U.S.C. § 1983. (DE 1.) Pursuant to 28 U.S.C. § 1915A, I must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune. 28 U.S.C. § 1915(b). Courts apply the same standard as when addressing a motion to dismiss under Rule 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, a complaint must contain enough to state a claim for relief that is plausible on its face and to raise the right to relief above the speculative level. *Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602-03 (7th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 602. In deciding whether the complaint states a claim, I must bear in mind that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Here, Farrell alleges claims against multiple correctional officers from the Miami Correctional Facility ("MCF") based on a series of events occurring in 2008. Farrell alleges that

on an unspecified date in 2008, he was entering the "Pen Products" building at MCF to report to his prison work assignment. He claims that Officer J. Shook conducted a pat-down search of him and in doing so "aggressively grabbed" his "groin area." (DE 1 at 5.) According to Farrell, he responded by telling Officer Shook, "You are not going to buy me dinner first, fag." (*Id.*) Farrell proceeded to his work assignment, but he was still upset about what occurred. He spoke with his boss Charlie McCord, a former Miami County Sheriff's Deputy, and asked him about the proper way to conduct a pat-down search of the groin area. McCord allegedly told him that an officer should use the back of his hand rather than the palm. (*Id.*) Farrell then demanded that McCord call a lieutenant to his work area to discuss the manner in which he had been searched by Officer Shook. Sergeant Bullins responded to McCord's call and spoke with Farrell briefly, but he refused to call in a lieutenant. Farrell alleges that he was growing increasingly upset by this point; in his words, "My blood pressure was rapidly rising and oxygen level was declining due to my testicles being aggressively grabbed." (*Id.*) He claims he was also experiencing chest pains, which led McCord to call prison medical personnel. Medical personnel told McCord to send Farrell to the medical unit for assessment. (*Id.*) Farrell alleges that as he was leaving the building to go to the medical unit Officer Shook made "rude comments" to him including asking him, "What's a matter big boy." (*Id.*)

Farrell arrived at the medical unit a short time later, but he was met by Sergeant Bullins, who refused to let him in. He told Sergeant Bullins "that it was a federal offense to be denied medical treatment," at which point Sergeant Bullins instructed another correctional guard, Officer Collins, not to admit Farrell to the medical unit. Officer Collins then refused to admit Farrell into the unit. Farrell was ordered to leave the area, and as he was leaving Officer Collins

2

and Sergeant Bullins, along with Officer K. White, made "comments of ridicule and disrespect" to him. (*Id.*) He responded by telling them, "I will be happy when you are fired." (*Id.*)

Farrell then returned to the Pen Products building, but he continued to feel ill. Ultimately he passed out, requiring an emergency "signal" to be called. (*Id.*) Officer White responded to the signal and assisted in putting Farrell on a gurney; Farrell claims that in doing so Officer White "jerked" him up by his arm and "slammed" him onto the gurney. (*Id.*) Farrell next recalls waking up in the medical unit with "wires and tubes running through and around me." (*Id.*) He claims that medical staff informed him that his blood pressure and oxygen levels were highly elevated. (*Id.*) After receiving some unspecified treatment, he was released back to his housing unit. He subsequently put in a request for further medical treatment because, in his words, "my shoulder hurt and I did not know why." (*Id.*) He was sent to the medical unit the following day and received an x-ray of his shoulder, but he does not indicate what the x-ray revealed or whether he received any additional treatment. (*See id.*)

As a result of Farrell making the comment "I will be happy when you are fired" to the three officers at the medical unit, he was written up by Captain Truex for intimidating and threatening staff. (*Id.*) After a disciplinary hearing, he was found guilty. As punishment the disciplinary board revoked earned good time credits and demoted him to a lower credit-earning class. (*Id.* at 6.) He claims that Captain Truex, Lieutenant Goyer, and Internal Affairs Officer Hoover, all of whom were involved in the disciplinary proceeding, denied him due process by concocting the false charges and denying him his "right to witnesses, witness statements, as well as for Officer Shook to take a lie detector test and his employee file with the complaints in it." (*Id.*)

In connection with these events, Farrell is suing Officer Shook, Sergeant Bullins, Officer Collins, Officer White, Lieutenant Goyer, Captain Truex, and Officer Hoover, as well as the Superintendent of MCF. (DE 1 at 1-2.) Farrell first claims that Officer Shook violated his rights by conducting the pat-down search in an unreasonably intrusive manner. Farrell believes this violated his right to privacy, but in general prisoners enjoy no Fourth Amendment protection from unreasonable searches. As the United States Supreme Court has explained, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984); *see also Johnson v. Phelan*, 69 F.3d 144, 147 (7th Cir. 1995) ("[P]risoners lack any reasonable expectation of privacy under the Fourth Amendment."). However, prisoners are protected by the Eighth Amendment, which forbids punishment that is "so totally without penological justification that it results in the gratuitous infliction of suffering." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). In limited circumstances, the search of a prisoner may rise to the level of an Eighth Amendment violation. *Hudson*, 468 U.S. at 530. To state such a claim, the prisoner must allege that the search in question was "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun*, 319 F.3d at 939.

Here, it is apparent from the complaint that Officer Shook had a legitimate reason to search Farrell, as he was entering a prison work area where non-prison personnel were present. Nevertheless, Farrell has alleged that Officer Shook conducted the search in an unnecessarily harassing manner by "aggressively grabb[ing]" his testicles. (DE 1 at 5.) There is nothing in the complaint from which it can be inferred that this action was a necessary part of the search.

Farrell also alleges that Officer Shook made humiliating comments to him shortly after the search, including asking him, "What's a matter big boy."[1] (*Id.*) These comments suggest that Officer Shook was motivated by a desire to harass Farrell rather than some legitimate penological purpose in conducting the search as he did. *See Calhoun*, 319 F.3d at 940 (allegation that officers made crude comments and sexually explicit gestures during a search supported claim that search was intended to demean and humiliate the plaintiff). Although it is somewhat difficult to assess the level of the intrusion on paper, Farrell alleges facts showing that he was deeply distressed by this incident. He became so upset that he passed out and had to receive emergency medical treatment. He later received counseling over the incident, and he claims the therapist told him "what I was telling him is the same thing women tell him when they are raped." (*Id.* at 6.) Although further factual development may show that Officer Shook did not act inappropriately or that Farrell overreacted to the incident, giving Farrell the inferences to which he is entitled at this stage, he has stated an Eighth Amendment claim against Officer Shook.

Farrell next raises claims against Sergeant Bullins and Officer Collins for denying him access to medical treatment. Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability the prisoner must show: (1) he had an objectively serious medical need; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v.*

---

[1] To the extent Farrell is suing over the rude comments themselves, verbal harassment is not actionable under the Eighth Amendment. *See DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).

*Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference is a high standard, and is "something approaching a total unconcern for a prisoner's welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations omitted).

Giving Farrell the inferences to which he is entitled, he has alleged an objectively serious medical need. He alleges that he was experiencing chest pains and an elevated blood pressure level, which ultimately caused him to pass out and necessitated emergency medical treatment. He further alleges that Sergeant Bullins and Officer Collins prevented him from obtaining medical treatment when he first went to the medical unit. It can be inferred from the complaint that this was not done for any legitimate purpose but because Sergeant Bullins was annoyed with Farrell over his complaints about the pat-down. According to Farrell, not only did the officers refuse to permit him to see medical staff about the chest pains he was experiencing, they ridiculed him as he left the medical unit. (DE 1 at 5.) Giving Farrell the inferences to which is entitled, he has alleged that these officers were deliberately indifferent to his medical needs. Accordingly, he will be permitted to proceed on an Eighth Amendment claim against Sergeant Bullins and Officer Collins.

Farrell next claims that Officer White used excessive force against him after he passed out by jerking him up by his arm and slamming him on a gurney. In cases involving the claimed use of excessive force "the core judicial inquiry" is "whether force was applied in a good-faith

effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Several factors are relevant to this determination, including "the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *DeWalt*, 224 F.3d at 619. With regard to the last factor, a plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, but by the same token an excessive force claim "ordinarily cannot be predicated upon a *de minimis* use of physical force." *Id.* at 619-20.

Ordinarily it might seem entirely reasonable for an officer to use a certain amount of force to place an injured inmate on a gurney during a medical emergency. Here, however, Farrell alleges that Officer White was involved in the earlier incident in which he was denied entry to the medical unit; Officer White allegedly joined with the other officers in ridiculing Farrell as he left the unit, and he was one of the officers to whom Farrell stated, "I will be happy when you are fired." (*See* DE 1 at 5.) The complaint can be read to allege that Officer White purposely used more force than was necessary to place Farrell on the gurney in retribution for the earlier incident. Although it does not appear that Farrell experienced a significant injury as a result, he does allege that Officer White's actions caused him pain for several days. It can also be plausibly inferred from the complaint that medical staff found sufficient justification to warrant an x-ray of Farrell's shoulder. Giving Farrell the inferences to which he is entitled at this stage, he has stated an excessive force claim against Officer White.

Farrell next alleges that Captain Truex, Lieutenant Goyer, and Officer Hoover violated his due process rights in connection with the disciplinary proceeding. Because Farrell lost earned time credits as a result of the proceeding, the appropriate vehicle for him to raise these claims is a habeas corpus petition, not an action under 42 U.S.C. § 1983. *See Hadley v. Holmes*, 341 F.3d 661, 664 (7th Cir. 2003); *Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir. 2001). Farrell cannot seek damages in connection with the violation of his due process rights unless and until the disciplinary sanction is overturned "by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (*Heck* doctrine applies to civil rights suits challenging prison disciplinary proceedings). Accordingly, the claims against these defendants will be dismissed without prejudice.

Finally, Farrell names the Superintendent of MCF as a defendant, but he does not mention him anywhere in the body of the complaint. (*See* DE 1 at 1, 4-6.) There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and the Superintendent cannot be held liable solely in his capacity as the official overseeing the prison. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001). There is nothing in the complaint to indicate he had any personal involvement in these events, and so he will be dismissed as a defendant.

For these reasons, the court:

(1) **GRANTS** Chad Farrell leave to proceed on a claim for monetary damages against Officer J. Shook in his individual capacity for conducting a pat-down search of Farrell in a manner designed to harass and humiliate him;

(2) **GRANTS** Chad Farrell leave to proceed on a claim for monetary damages against Sergeant Bullins and Officer Collins in their individual capacities for denying him access to medical care;

(3) **GRANTS** Chad Farrell leave to proceed on a claim for monetary damages against Officer K. White in his individual capacity for using excessive force against him;

(4) **DISMISSES** the Superintendent of Miami Correctional Facility as a defendant;

(5) **DISMISSES WITHOUT PREJUDICE** the claims against Lieutenant Goyer, Captain Truex, and Officer Hoover;

(6) **DISMISSES WITH PREJUDICE** all other claims in the complaint;

(7) **DIRECTS** the United States Marshals Service, pursuant to 28 U.S.C. § 1915(d), to effect service of process on Officer J. Shook, Sergeant Bullins, Officer Collins, and Officer K. White; and

(8) **ORDERS**, pursuant to 42 U.S.C. § 1997e(g)(2), that Officer J. Shook, Sergeant Bullins, Officer Collins, and Officer K. White respond, as provided for in the Federal Rules of Civil Procedure and N.D. IND. L.R. 10.1, only to the claims for which the *pro se* plaintiff has been granted leave to proceed in this screening order.

**SO ORDERED**.

ENTERED: March 21, 2011

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT